## APPEAL OF JEROME L. BOYER, ADMR., ETC.
## APPEAL OF THE READING FIRE INS. CO., TRUSTEE, ETC.

[ESTATE OF CHARLES H. HUNTER.]

FROM THE DECREE OF THE ORPHANS' COURT OF BERKS COUNTY.

Argued March 6, 1889—Decided April 1, 1889.
[To be reported.]

(a) A., a testamentary trustee, filed an account in which he took credit for $1,401.37 commissions, though he expressed a purpose to give the same to the testator's children. A. died without making the gift, and before his account was confirmed. B. succeeded him in the trust and was also made administrator d. b. n. c. t. a. of the testator.

(b) A.'s executors filed a final account of his trusteeship, in which the trust was charged with $932.50, principal and interest of a note made by the testator in favor of A., but barred by the statute of limitations. To B.'s objection to the credit, A.'s executors insisted upon its allowance, or upon retaining the $1,401.37 commissions. By a compromise agreement, the credit was allowed, the account confirmed, and $468.17 paid to B., who gave a receipt for the entire $1,401.37, which recited that the same was held by B. for the benefit of the testator's children.

(c) B. died and his administrator filed his account as trustee. In A.'s account credit had been given him for certain books and instruments, the property of the testator. In B.'s account no mention was made of this property and the evidence did not show what disposition had been made of it.

(d) C. succeeded B. in the trust, and claimed to surcharge him with the whole $1,401.37, commissions as above, and also with the appraised value of the books and instruments, with interest from the date when B. received the other property of the testator and presumably the books and instruments also. *Held:*

1. That B.'s account must be surcharged with $932.50, the amount of the note and interest which had been barred by the statute of limitations, and that the $468.87, the balance between this sum and the $1,401.37 commissions, B. held as trustee for the testator's children, under the terms of his receipt.

2. That B.'s account must be surcharged with the appraised value of the books and instruments, since they were wholly unaccounted for, but as the evidence failed to show any actual sale thereof, or fix any date from which to compute interest, none would be charged.

Statement of Facts.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

Nos. 98 and 108 January Term 1889, Sup. Ct.

In June, 1870, Charles H. Hunter died testate, leaving a
widow and several children. By his will he devised all his
property to his executor, John McManus, in trust to pay the
income to his widow for life, but providing that as each child
arrived at the age of 25 years, such child was to have his share
of two thirds of the principal of the estate, and upon the death
of the widow to have his share of the remaining one third.

On December 24, 1874, McManus filed an account as trustee,
in which he claimed credit for $1,401.37 as commissions on
funds which had passed through his hands. He expressed a
purpose, however, to give these commissions to the children of
the testator. On June 2, 1875, before his account was con-
firmed, McManus died, and Ammon L. Boyer was appointed
testamentary trustee in his place, and also administrator d. b.
n. c. t. a. of the testator.

The executors of McManus filed his final account as trustee,
November 20, 1875, in which they charged against the trust, a
note made by testator, in his lifetime, in favor of McManus and
due in June, 1862, amounting with interest to $932.50. Boyer,
as successor in the trust, objected to allowing credit for this
note, on the ground that it was barred by the statute of limita-
tions. McManus' executors insisted that the note must be
allowed or they would retain the $1,401.37, commissions above
referred to. Boyer then withdrew his objections and the ac-
count was confirmed by agreement. McManus' executors
paid Boyer $468.87, the difference between the note and in-
terest and the commissions, and he signed the following declara-
tion and receipt, dated January 12, 1876:

" Whereas, John McManus in his lifetime was desirous of
investing any commissions he had in charge as executor of Dr.
Charles H. Hunter, deceased, in trust for the benefit of the
children of Dr. Hunter, and when the account was stated he
expressly directed that the commissions should be applied so;
and whereas, since his death a settlement has been made of the
account of John McManus, executor, as aforesaid, and the
balance due by the McManus estate to Hunter's estate has

Adjudication.

been fixed on the express understanding that the commissions charged in the first account should be so invested.

"Now, therefore, I, Ammon L. Boyer, do hereby acknowledge that I have received this day from John McManus' executors the sum of fourteen hundred and one dollars and thirty-seven cents, to be held by me, my heirs and executors, in trust for the children of Dr. Hunter, deceased, the interest to be applied to their maintenance and support until the youngest child attains the age of twenty-one, and then to be distributed among the children then living, share and share alike."

On September 8, 1885, Ammon L. Boyer died and the Reading Fire Ins. Co. succeeded him as trustee, while Jerome L. Boyer was appointed his administrator and filed for him an account with the trust. A medical library and surgical instruments, property of the testator, for which McManus had received credit in his account, were not mentioned in this account. The evidence did not show what disposition had been made of them. The Reading Fire Ins. Co. excepted to the account and asked to have the accountant surcharged with the appraised value of the library and instruments; and also with the $1,401.37 commissions.

At the adjudication before SCHWARTZ, P. J., the court filed the following opinion:

Three exceptions are filed by the trustee to the account. The first asks to have the accountant surcharged with $285.95 for a medical library, and the second for a surcharge of $119.22 for goods that came into his hands, as trustee, and for which he fails to account, either in this account or with his successor in office. He appears to have accounted for and transferred to his successor, property in specie, as follows:

Twenty-six shares of the East Penn. R. Company; two hundred shares of the Reading Fire Insurance and Trust Company; eight shares of Reading Iron Works; one hundred and twenty-two shares of National Union Bank of Reading, Pa.; ten shares of the Reading Steam Forge Company, and one silver dollar.

The above mentioned shares of stock appear to have come into the late trustee's possession. His representative has transferred them to the present trustee of the estate. The cestuis

Adjudication.

que trust and their trustee, however, contend that the books and instruments mentioned in the exceptions, also passed into his possession. What are the facts in relation thereto? The same must be gotten and gathered from the evidence submitted, which shows, uncontradictedly, that he had them, or at least a portion thereof, in his possession, and that he sold and converted them into money. What he realized the court cannot determine, he having kept no account of the goods which came into his hands, nor of the proceeds upon their sale. It is, however, of the opinion that it should be presumed that, inasmuch as he had some of the books and instruments, he had the whole of them. It is clearly proven that he had such property and had sold it without accounting for the proceeds thereof. In the court's opinion all intendments should be taken against him. It is, however, contended that this portion of the estate came into the possession of Ammon L. Boyer, as administrator de bonis non with the will annexed. He held both of the offices. To that of the trustee he was appointed in July, 1875, and to that of administrator in October, 1875. It is shown that he received all the rest of the estate, whether the same consisted of moneys, bonds or stocks, as trustee on the estate. It is but fair to presume that he received all the property in the same capacity. The court has no means to reach the value of said property, except by a resort to the inventory and appraisement. The same were valued by the appraisers at $405.17. These exceptions are sustained and the accountant surcharged therewith.

The other (3d) exception seeks to have the accountant surcharged with the sum of $1,401.37 for commissions charged John McManus, which his son, William S. McManus, after the former's death, paid to said Ammon L. Boyer, in trust and for the use of the children of Charles H. Hunter, under an agreement and by way of compromise for the allowance of the credit of $932.50 taken in their account as executors of John McManus, deceased, on the estate of said Charles H. Hunter, deceased. The credit was taken for a note which fell due on June 28, 1862. No evidence of payment of interest or recognition of the note by Hunter in his lifetime has in any way been shown. On the contrary, the note appears to have been barred at the time of Hunter's death, and it further appears

that John McManus, when he filed his account on the Hunter estate, did not charge the same against the estate, all of which tend to show that the note was either barred by the statute of limitations or settled between the parties in their joint lifetime. Hence the credit was taken illegally and would have been stricken off upon proper process.

The court, without passing upon the contract, so far as Hunter's children are concerned, now decide that the said credit was an improper one, and surcharge the estate of the accountant with the said sum of $932.50, for which John McManus' executors had improperly taken credit. This disposes of the exceptions to the account.

To this adjudication Jerome L. Boyer, administrator, filed the following exceptions:

1. The court erred in surcharging the accountant with the sum of $405.17, the supposed value of surgical instruments and medical books.[1]

2. The court erred in surcharging the accountant with $932.50, the credit which had been allowed the estate of John McManus, a former trustee of Dr. Charles H. Hunter.[2]

The Reading Fire Ins. Co., trustee, filed the following exceptions:

1. The learned judge erred in not charging the accountant with the interest on the value of the medical library and surgical instruments from July 20, 1875, the time when the accountant received the other assets of the estate and when he must be presumed to have received these also.[3]

2. The learned judge erred in not charging the accountant with $1,401.37, commissions waived by the executors of John McManus, former executor of Charles H. Hunter. The money was paid by a compromise, in which Hunter's estate paid the consideration, and the compromise enured to the benefit of the estate. It is not sufficient to charge the accountant with the consideration. The true rule is that the estate is entitled to the consideration or the bargain, whichever is most beneficial.[4]

Upon these exceptions the court, SCHWARTZ, P. J., filed the following opinion:

Arguments.

Both parties, accountant and cestuis que trust, filed exceptions to our findings. The cestuis que trust object first to the non-allowance of interest upon the proceeds of sale of medical library and surgical instruments. There is, in point of fact, little, if any, evidence that he sold the same. It is, however, clear that the same were on hand at the death of his predecessor, and that it was his duty to receive the same upon the assumption of the trust to which the court appointed him and for which he qualified himself to take charge. It being his duty to take charge of this property, and either not having done so, or having done so and in some way having lost the same, he should be surcharged with the value thereof. This has been done. No more can consistently be required of him as trustee of said estate.

Their second exception, which seeks to have the accountant surcharged with $1,401.37, is dismissed for the reasons stated by the adjudication.

The exceptions on behalf of the estate of the trustee are, first: That the court erred in surcharging the accountant with $405.17, the appraised value of the decedent's medical books and surgical instruments. We are of the opinion and we have fully explained ourselves upon this point. We can find no error in our then findings. Its second exception is dismissed for the statements and reasons set out in our adjudication upon this estate. All exceptions to the report are dismissed, and the report upon adjudication and distribution is hereby confirmed.

Thereupon Jerome L. Boyer, administrator, took an appeal and assigned as error:

1. The dismissal of the exception.[1]
2. The dismissal of the exception.[2]

The Reading Fire Ins. Co. trustee, also took an appeal, and assigned as error:

1. The dismissal of exception.[3]
2. The dismissal of exception.[4]

*Mr. Jeff. Snyder* (with him *Mr. Daniel Ermentrout*, and *Mr. C. H. Ruhl*), for Jerome L. Boyer, admr., etc., appellant:

1. Mr. Boyer was made trustee in July, 1875, but before the

Arguments.

estate was turned over to him he was appointed administrator,
d. b. n. c. t. a. The account before the court was a trustee's account of the money and securities which Boyer had
received. On the unadministered goods, such as the medical
library and instruments, there should have been an administration account filed. The importance of this point will appear
when it is considered that Mr. Boyer's estate may prove insolvent. The bondsmen on the trustee's bond are not the same
as those on the administration bond.

2. By taking credit for the commissions in his account,
which was subsequently confirmed, the $1,401.37 became the
absolute property of John McManus or his estate. The charge
was the usual one for such services, and the court decreed that
he should have it. That question was settled. Thereafter
Mr. McManus and his representatives could dispose of it as of
any other of the assets of his estate. We maintain that when
this money was turned over into the hands of Ammon L.
Boyer, on the terms fixed by the declaration of trust, it constituted a new and essentially different trust from that created
by Dr. Hunter in his will, and Mr. Boyer's estate cannot be
charged with it as a part of the latter trust.

3. As to the note, there was no evidence that it was not
valid, and Boyer, as administrator, was not bound to plead the
statute of limitations. An administrator can retain his own
debt, though barred. He is the personal representative of
the intestate and is bound simply to exercise good faith: Lewin
on Trusts, 590*; Ritter's App., 23 Pa. 96. If the former executor and trustee, McManus, could retain his own debt though
barred, and if his account, so retaining it, was approved by the
court, how can the same court now surcharge Mr. Boyer for
not objecting? How can this court now do this at the behest
of a trustee who had no existence until a dozen years after the
confirmation of the account and for the benefit of a woman
who was sui juris, fully informed, and able to make the objection herself?

*Mr. Isaac Hiester*, for the Reading Fire Ins. Co. trustee, appellant:

1. A successor to a testamentary trustee has power to collect
the assets of the decedent left unconverted by the former

trustee who was also executor, in preference to the administrator d. b. n.: Anderson v. Henszey, 9 Phila. 14.

2. It is contended that Boyer is not chargeable with the $932.50 in the settlement of his account as trustee because, at the time he received the money, he included in his receipt to McManus' executors a statement that he would apply the $1,401.37 to the use of Dr. Hunter's children to the exclusion of the widow. It is perfectly manifest that, as this money was secured by a compromise in which the estate paid $932.50, the compromise enured to the benefit of the estate, and that the trustee could not divest the title of the parties entitled in favor of any other persons. Boyer might as well have attempted to hold the money in trust for his own wife, or for himself, as to attempt to vary in the slightest particular the trust on which he received it.

3. Nor was it any longer within the power of McManus, or his executors, to create a new trust for this money, because the money did not pass from them as their gift, as McManus had originally and generously intended, but now passed from them as a consideration paid by them in compromise of a disputed claim. "Compromises by which money is gained or saved by executors or administrators or trustees enure to the benefit of those for whom they act:" Saeger v. Wilson, 4 W. & S. 501; Kepler v. Davis, 80 Pa. 153.

## BOYER'S APPEAL.

OPINION, MR. JUSTICE WILLIAMS:

Dr. Hunter died in June, 1870. He devised all his estate, real and personal, to John McManus, in trust, to pay over the income therefrom to his widow during her life, but providing that each of his children upon reaching the age of twenty-five years should be paid his or her distributive share of two thirds of his estate, and on the death of his widow the remaining third should be divided in like manner. In 1875, McManus filed an account as trustee in which he took credit for commissions on funds passing through his hands amounting to $1,401.37. This was not confirmed until after his death, which took place in June, 1875. He had expressed a purpose to give his commissions to the children of Dr. Hunter, but at the time of his death no gift had been made. Ammon L. Boyer was appointed

trustee in place of McManus and afterwards became adminis-
trator de bonis non and c. t. a. of Dr. Hunter.   The executors
of McManus filed his final account as trustee under Dr. Hun-
ter's will, and charged up against the trust a note for five
hundred dollars, given some thirteen or fourteen years before,
with the interest thereon amounting together to $932.50.
Boyer, the successor in the trust, objected to the allowance of
this item alleging that the note had been barred by the statute
of limitations for years when McManus filed his first account,
in which no mention was made of it.   To this objection the
executors of McManus replied that if this item of $932.50 was
not allowed, the commissions, amounting to $1,401.37, would
be retained, but if no objection was made to the note and in-
terest the commissions would be given to Dr. Hunter's children,
as he had proposed in his lifetime.   The simple alternative
was presented to allow the note and interest and receive the
commissions or to insist on the objection and lose the commis-
sions.   Boyer naturally decided to take the course which would
increase the fund in his hands by the difference between the
note and the commissions, which was $468.87.   The objections
to the account of the executors of McManus were withdrawn,
the account confirmed, and on receiving the difference between
the two sums Boyer executed the receipt of January 12, 1876,
in which he acknowledged the receipt of fourteen hundred and
one dollars and thirty-seven cents, "to be held by me, my heirs,
and executors, in trust for the children of Dr. Hunter, de-
ceased, the interest to be applied to their maintenance and
support until the youngest child attains the age of twenty-one
years and then to be distributed among the children then liv-
ing share and share alike."   Ammon L. Boyer died in Septem-
ber, 1885.   The Reading Fire Insurance Company is his
successor in the trust under Dr. Hunter's will.   Jerome L.
Boyer is his administrator and has filed an account with the
trust for Ammon L. Boyer.   The Reading Fire Ins. Co. seeks
to surcharge the accountant with the value of a medical library
and surgical instruments which belonged to Dr. Hunter, and
with the $932.50, the amount of the note and interest which
were allowed to the executors of McManus.

As to the first of these items the evidence is vague and un-
certain.   It does not clearly appear whether the books and

instruments were sold by Boyer or not, but they came into his custody and we think the court was right in holding that he must account for them or be charged with their appraised value.

The other item of surcharge requires a more extended consideration. The transaction of which the receipt of January 12, 1876, was part was in effect a bargain between the executors of McManus and Boyer, as trustee. The executors proposed that if the note and interest was allowed to them they would pay the amount back to Boyer with enough more to make up the amount of the commissions which McManus had proposed to give to Dr. Hunter's children. In other words they would carry out their testator's intentions if they could be allowed to turn in an invalid and worthless claim for about three fourths of the entire amount. But the note and interest were charged against the trust estate. The payment of it took $932.50 of the money belonging to the trust, and when it was returned to Boyer by the executors of McManus in pursuance of the arrangement between them, it had not changed character. It was the same money and belonged to the same fund. The only money really paid by the executors of McManus was the sum of $468.87, the amount necessary to make up with the note and interest a sum equal to the commissions which McManus had proposed to give. The $932.50 never left the hands of Boyer. It belonged to the trust created by Dr. Hunter after the arrangement of January 12, 1876, as well as before, because Boyer had no power to divert it from the purposes of the trust, and for the further reason that it continued in his hands. As to the amount which really came from the estate of McManus, it was competent for those who gave the money to impress upon it such trust as they pleased. They devoted the money which they paid, which was really but $468.87, to the children of Dr. Hunter and not to the trust created by his will. As to this sum Ammon L. Boyer is a trustee for the children under the terms of the paper of January 12, 1876, and is not liable to account as trustee under Hunter's will. As to the $932.50 he is liable to account precisely as though the arrangement had never been made with the executors of McManus.

The receipt was so evidently given under a misapprehension

of the real character of the arrangement that we must restrain its operation in the manner now indicated. This does exact justice to all parties. It recognizes the new trust created by the executors of McManus to the extent to which they furnished money for it. It preserves the funds raised under the will of Dr. Hunter for the uses prescribed in his will, and it saves the estate of Ammon L. Boyer from the danger of liability beyond the amount of money actually received by him to which the receipt of January 12, 1876, exposed him.

Upon the principles thus stated,

The judgment is affirmed.

## READING FIRE INS. CO.'S APPEAL.

OPINION, MR. JUSTICE WILLIAMS:

The first assignment of error is not sustained. There was nothing in the evidence by which the fact of the sale of the medical books and surgical instruments by Boyer was established, or any date fixed from which interest ought to be charged. They were wholly unaccounted for, and they were accordingly charged to the trustee at their appraised value, with interest for three years thereon. In the absence of evidence giving definite information as to the fact of the actual conversion of these articles into money, and the time when, and the amount realized therefrom, we cannot say that the court is guilty of manifest error in its disposition of this subject.

The second assignment is equally without support. The transaction of January 12, 1876, was not a "waiving of the right to commissions" which had been allowed to McManus and were actually in the hands of his executors, but was an arrangement by which they retained the larger portion of them in their own hands, by securing a credit for the sum of $932.50, for a note which had been long barred by the statute of limitations. The ruling of the learned judge of the court below upon this subject we have affirmed in an opinion, filed at the present term, in the appeal of Jerome L. Boyer, administrator, etc., from the same decree from which this appeal was taken. We refer to the opinion in that case for a discussion of the reasons on which our decision rests.

The decree is affirmed.